

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**
JAN 2 2 2008
Jan 22, 2008
JUDGE JOHN W. DARRAH
UNITED STATES DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 07 CR 816 |
| vs. ) | Judge John W. Darrah |
| ) | |
| THOMAS SHUMATE ) | |

### PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant THOMAS SHUMATE, and his attorney, THEODORE SINARS, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charge in This Case

2. The information in this case charges defendant with two counts of corruptly impeding the administration of internal revenue laws by failing to pay over income and payroll taxes to the United States, in violation of Title 26, United States Code, Section 7212.

3. Defendant has read the charges against him contained in the information, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charges to Which Defendant is Pleading Guilty

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to both counts of the information. The information charges defendant with two counts of

corruptly impeding the administration of internal revenue laws by failing to pay over income and payroll taxes to the United States, in violation of Title 26, United States Code, Section 7212.

## Factual Basis

6. Defendant will plead guilty because he is in fact guilty of the charges contained in the information. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

   a. <u>Count One</u>: On or about October 29, 2004, in the Northern District of Illinois, Eastern Division, THOMAS SHUMATE, defendant herein, who conducted business as a taxpayer representative, and who, during the third quarter of the year 2004, did corruptly obstruct and impede the due administration of internal revenue laws, by obtaining $107,193 in 941 Amounts from Employer A, by wilfully filing a false IRS Form 941, by only paying $89,310 to the IRS and by diverting $17,883.81 for his own purposes, in violation of Title 26, United States Code, Section 7212(a).

   b. <u>Count Two</u>: On or about October 29, 2004, in the Northern District of Illinois, Eastern Division, THOMAS SHUMATE, defendant herein, who conducted business as a taxpayer representative, and who, during the third quarter of the year 2004, did corruptly obstruct and impede the due administration of internal revenue laws, by obtaining $47,660 in 941 Amounts from Employer B, by wilfully filing a false IRS Form 941, by only paying

2

$38,985 to the IRS and by diverting $8,675 for his own purposes, in violation of Title 26, United States Code, Section 7212(a).

More specifically, from in or around 2001 through on or about December 31, 2006, SHUMATE was the sole owner and operator of Propay, Inc., an S-Corporation doing business in Gurnee, Illinois. SHUMATE's responsibilities on behalf of his clients included the preparation and filing of tax returns, including the preparation of IRS Form 941, the Employer's Federal Quarterly Federal Tax Return. SHUMATE was also obligated to account for and pay over any payroll taxes (withheld federal income tax and both employee and employer shares of social security and Medicare taxes, hereafter, "941 Amounts") collected from his clients and due and owing to the Internal Revenue Service ("IRS").

In addition to Employers A and B, SHUMATE agreed to act as a taxpayer representative for at least approximately thirty-four corporate clients who were obligated to pay payroll taxes to the IRS. In his capacity as a taxpayer representative, SHUMATE contracted with clients to calculate their payroll taxes due and owing to the IRS, and agreed to account for and pay over any 941 Amounts due and owning to the IRS.

Between 2001 and 2006, SHUMATE collected approximately over $1 million in 941 Amounts from his clients. SHUMATE, however, falsely represented to approximately 22 of his clients that he paid the IRS the funds he collected from the clients, when in truth and fact, he did not pay over to IRS those collected 941 Amounts. For approximately 23 of his clients, SHUMATE knowingly and wilfully prepared IRS Forms 941 that falsely understated

the amount of 941 Amounts due and owing to the IRS. He knowingly and wilfully submitted these false forms to the IRS with the understated 941 Amounts. For approximately 8 of his clients, SHUMATE knowingly and wilfully failed to account for or file IRS Forms 941 or 941 Amounts, and did not file that form with, or pay the funds to, the IRS. In each instance, SHUMATE falsely told his clients that he was paying over to the IRS the money they entrusted to him, when in truth and fact, he had intentionally diverted the funds.

Over the course of his scheme to defraud his clients and fail to collect and pay over 941 Amounts to the IRS, it is the government's position that SHUMATE caused an actual loss to IRS of $701,152, and an additional attempted loss of $479,742, for a total intended loss of $1,180,894. SHUMATE acknowledges he caused an actual loss of $701,152.

7.     Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3: SHUMATE acknowledges that for the tax years 2001 to 2006, he was required by law to file truthful and accurate federal income tax returns to the District Director of Internal Revenue for the Internal Revenue District of Chicago, at Chicago, in the Northern District of Illinois, Eastern Division, or to the Director, Internal Revenue Service Center, Midwest Region, Kansas City, Missouri, stating specifically the items of his gross income and any deductions and credits to which he was entitled. SHUMATE admits that from the tax years 2001 to 2005, he knowingly and wilfully underreported $61,939 in gross income to the IRS that he derived from his scheme to collect

and divert 941 Amounts during the same time period of 2001-2005, resulting in an additional loss to the IRS of $17,343.

8. The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crime and related conduct.

## Maximum Statutory Penalties

9. Defendant understands that each charge to which he is pleading guilty carries the following statutory penalties:

    a. A maximum sentence of three years' imprisonment for each count. This offense also carries a maximum fine of $250,000 for each count. Defendant further understands that the judge also may impose a term of supervised release of not more than three years. Therefore, the maximum sentence is six years imprisonment, a fine of $500,000 and a term of supervised release of not more than three years.

    b. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $200 on the charges to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

10. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

11. For purposes of calculating the Sentencing Guidelines, the parties agree and disagree on the following points:

   a. **Applicable Guidelines**. The Sentencing Guidelines to be applied in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guideline Manual.

   b. **Offense Level Calculations.**

      i. The government's position is that the base offense level for the charges in the information is 22, pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(I), because the intended loss ($1,242,733) is greater than $1 million and less than $2.5 million. Defendant disagrees and takes the position that only the actual loss should be used to calculate the loss amount, resulting in a base offense level of 20, pursuant to Guideline §§ 2T1.1(a)(1) and 2T4.1(H), because the actual loss ($718,495) is greater than $400,000 and less than $1 million.

6

ii.     The base offense level is increased by 2 levels, pursuant to Guideline § 3B1.3, because defendant abused a position of private trust or used a special skill in a manner that significantly facilitated the commission or concealment of the offense.

iii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iv.     In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the

government, defendant's criminal history points equal zero and defendant's criminal history category is I.

  d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the government's position is that the anticipated offense level is 21, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 37-46 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. The defendant's position is that the anticipated offense level is 19, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 30-37 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

  e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

    f.  Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

    g.  Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

12.    The government will recommend a sentence within the applicable guidelines range.

13.    It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

14.    Regarding restitution, defendant agrees that the offense to which he is pleading guilty is an offense that resulted in an actual loss to the United States in the amount of approximately $718,495, minus any amounts repaid prior to sentencing. Defendant understands that, pursuant to Title 18, United States Code, Section 3663A, the court must order restitution in that amount, minus any amounts already paid back to the victim. Defendant understands that Title 18, United States Code, Section 3664 and Sections 5E1.1 and 5E1.2 of the Sentencing Guidelines set forth the factors to be weighed in setting a fine and in determining the schedule according to which restitution is to be paid in this case. Defendant agrees to provide full and truthful information to the Court and United States Probation Officer regarding all details of his economic circumstances to determine the proper restitution schedule according to which defendant may be ordered to pay. Defendant

understands that providing false or incomplete information may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the court.

15. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

### Presentence Investigation Report/Post-Sentence Supervision

16. Defendant understands that the United States Attorney's Office in its submission to the Probation Department as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17. Defendant has provided information to the government relating to additional matters as to which the government may, in its discretion, undertake further investigation. At the time of this plea agreement, the information provided by defendant relating to this additional matter does not amount to "substantial assistance" within the meaning of U.S.S.G. §5K1.1, and the parties do not anticipate that this will change prior to defendant's sentencing. If, as a result of further investigation by the government, or further assistance provided by or on behalf of defendant, the government, in its sole discretion, determines subsequent to sentencing that defendant has provided substantial assistance with respect to this additional

matter, the government, at its sole discretion and in accordance with Rule 35(b) of the Federal Rules of Criminal Procedure, may move the Court to reduce the defendant's sentence. Defendant acknowledges that if the government, in the exercise of its discretion, does not move the Court pursuant to Rule 35(b) as described above, or if the Court denies any such motion filed by the government, he will have no right to withdraw his guilty plea.

18.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

19.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or

probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

20. This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 816.

21. This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

22. Defendant understands that nothing in this Plea Agreement shall limit the Internal Revenue Service (IRS) in its collection of any taxes, interest or penalties from defendant or defendant's partnership or corporations. Defendant understands that the amount

of tax as calculated by the IRS may exceed the amount of tax due as calculated for the criminal tax case.

## Waiver of Rights

23. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Right to be charged by indictment.** Defendant understands that he has a right to have the charge prosecuted by an indictment returned by a concurrence of twelve or more members of a grand jury consisting of not less than sixteen and not more than twenty-three members. By signing this Agreement, defendant knowingly waives his right to be prosecuted by indictment and to assert at trial or on appeal any defects or errors arising from the information, the information process, or the fact that he has been prosecuted by way of information.

    b. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt as to both counts, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt as to both counts. The jury would have to agree unanimously before it could return a verdict of guilty or not guilty on both counts.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt as to both counts.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  c. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction and any part of the sentence, including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture (or the manner in which that sentence was determined), in exchange for the concessions made by the United States in this Plea Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim

of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

    d.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Other Terms

24.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

25.    Defendant agrees to cooperate with the IRS in any tax examination or audit of defendant, defendant's partnerships or corporations and the clients of Propay, Inc. which directly or indirectly relates to or arises out of the course of conduct which defendant has acknowledged in this Plea Agreement, by transmitting to the IRS original records or copies thereof, and any additional books and records which the IRS may request. Nothing in this paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

### Conclusion

26.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

29. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

30. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: January 22, 2008

PATRICK J. FITZGERALD
United States Attorney

THOMAS SHUMATE
Defendant

LISA NOLLER
Assistant U.S. Attorney

THEODORE SINARS
Attorney for Defendant